IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| AMANDA C. WHITEWOLF, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | )  CIV-14-610-M |
| v. | ) |
| | ) |
| CAROLYN W. COLVIN, | ) |
|   Acting Commissioner of Social | ) |
|    Security Administration, | ) |
| | ) |
| Defendant. | ) |

REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying her application for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 416(I), 1382. Defendant has answered the Complaint and filed the administrative record (hereinafter TR___), and the parties have briefed the issues. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the following reasons, it is recommended that the Commissioner's decision be affirmed.

I. Administrative History and Relevant Evidence

Plaintiff filed her application for benefits on May 9, 2011 (protective filing date),

1

alleging she became disabled on January 17, 2011. (TR 127, 164). Plaintiff was only 28 years old at the time she filed her application. She has a high school education and previous work as a cashier, patient care assistant, daycare teacher, and office clerk. (TR 156, 168). Plaintiff alleged disability due to asthma and degenerative disc disease. (TR 168).

In a Function Report dated May 31, 2011, Plaintiff stated that she was the primary caregiver for three small children, although she had back pain and asthma that limited her activities. Plaintiff described her usual daily activities and estimated she could lift 20 pounds and walk ½ block. (TR 175-182). Plaintiff stated on July 20, 2011, that "[w]hen my back goes out I can't sit, stand, or walk for [at] least 3 - 4 days and that happens [at] least twice a month. My back and extremities ache all day, everyday." (TR 198).

The record reflects that Plaintiff has been treated at the Lawton Indian Hospital by Dr. Rodriguez, Dr. Canez, and other medical professionals for a variety of conditions, including low back pain, asthma, ankle pain, and diabetes. At her treating clinic, Plaintiff was prescribed medications for degenerative disc disease and asthma. In April 2012, physical therapy was prescribed for her back pain. Plaintiff also received treatment for back pain from a chiropractor, Dr. Phillips, in August 2011.

Plaintiff was treated on four occasions by Dr. Ofori, a neurosurgeon, in April 2012, May 2012, July 2012, and October 2012. (TR 449-453, 526, 527). Based on MRI testing, Dr. Ofori noted a diagnostic assessment in May 2012 of displacement of lumbar intervertebral disc without myelopathy and spinal stenosis of lumbar region. Dr. Ofori recommended non-surgical treatment consisting of pain management with medications.

2

In Dr. Ofori's office notes of his treatment of Plaintiff, Dr. Ofori repeatedly noted he had recommended Plaintiff increase her activities. In May 2012 and again in October 2012, Plaintiff reported the narcotic pain medication prescribed by Dr. Ofori helped her pain. (TR 449, 499).

In February 2012, Dr. Rodriguez recommended that Plaintiff exercise and reduce her weight. (TR 465). Plaintiff began physical therapy in October 2012, and her physical therapist reported that Plaintiff walked without difficulty, did not exhibit symptoms of nerve root compression, and responded well to back flexion specific exercise. (TR 502). Plaintiff was advised to lose weight and engage in aerobic activity. (TR 502).

Her treating physician, Dr. Canez, noted in August 2012 that Plaintiff had a medical history of chronic depression and anxiety but that she had been noncompliant with treatment recommendations for behavioral therapy. (TR 484). The physician noted that Plaintiff had been noncompliant with a follow-up appointment scheduled in January 2012 "due [to] her school schedule." (TR 484). Plaintiff was advised by this physician to exercise. (TR 488).

Dr. Rodriguez completed forms in December 2011 and July 2012 for Plaintiff's Native American tribe to facilitate her receipt of benefits for vocational rehabilitation and general assistance. (TR 394, 395, 457). Although the physician's statements on these forms are largely illegible, it appears that Dr. Rodriguez opined Plaintiff was not employable at that time (TR 395) or for six months (TR 394, 457) due to chronic low back pain and degenerative disc disease but she might be employable in the future and that her condition could improve with treatment.

3

Plaintiff testified at an administrative hearing conducted on November 8, 2012, before Administrative Law Judge Parrish ("ALJ"). (TR 30-46). A vocational expert ("VE") also testified at the hearing. The VE testified that a hypothetical individual with Plaintiff's vocational characteristics (age, education, and work history) and the capacity to perform light, unskilled work with environment restrictions could perform work available in the economy, including the jobs of counter attendant, laundry aide, and housekeeper. (TR 43).

II. ALJ's Decision

The ALJ issued a decision on December 14, 2012, denying Plaintiff's application for benefits. (TR 14-29). The ALJ found that Plaintiff had severe impairments due to asthma, degenerative disc disease, morbid obesity, diabetes mellitus, and depression. She did not have an impairment or combination of impairments that were *per se* disabling under the agency's Listing of Impairments. Despite her impairments, Plaintiff had the residual functional capacity ("RFC") to perform light, unskilled work that allowed her to avoid even moderate exposure to fumes, odors, dust, gases, poor ventilation, and noxious fumes.

Relying on the VE's testimony at the hearing, the ALJ found that Plaintiff was capable of performing work that was available in the economy and she was not disabled within the meaning of the Social Security Act.

Plaintiff submitted additional evidence to the Appeals Council, including the third-party statement from her father dated September 1, 2011, and the medical reports from Plaintiff's follow-up visits to Dr. Ofori in July 2012 and October 2012. (TR 4). The Appeals Council issued a Notice of Action stating that it had considered the additional evidence but

4

found no reason to change the ALJ's decision. Based on this finding, the Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision is the final decision of the Commissioner. See 20 C.F.R. § 416.1481; Wall v. Astrue, 561 F.3d 1048, 1051 (10th Cir. 2009).

III. General Legal Standards Guiding Judicial Review

The Court must determine whether the Commissioner's decision is supported by substantial evidence in the record and whether the correct legal standards were applied. Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010); Doyal v. Barnhart, 331 F.3d 758, 760 (10th Cir. 2003). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007). The "determination of whether the ALJ's ruling is supported by substantial evidence must be based upon the record taken as a whole. Consequently, [the Court must] remain mindful that evidence is not substantial if it is overwhelmed by other evidence in the record." Wall, 561 F.3d at 1052 (citations, internal quotation marks, and brackets omitted).

The Social Security Act authorizes payment of benefits to an individual with disabilities. 42 U.S.C. § 401 *et seq*. A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); accord, 42 U.S.C. § 1382c(a)(3)(A); see 20 C.F.R. § 416.909 (duration requirement). Both the "impairment"

and the "inability" must be expected to last not less than twelve months. Barnhart v. Walton, 535 U.S. 212 (2002).

IV.  RFC Finding

In her opening brief, Plaintiff contends that there is not substantial evidence to support the ALJ's RFC finding. Plaintiff first points to "internal inconsistencies" in the ALJ's decision. Plaintiff's Opening Brief, at 8 (ECF page number 14). Plaintiff contends that the ALJ made inconsistent findings in the decision regarding the severity of her impairments due to obesity and diabetes mellitus.

The ALJ found at step two of the required sequential evaluation procedure that Plaintiff had severe impairments due to asthma, degenerative disc disease, morbid obesity, diabetes mellitus, and depression. (TR 16). However, in the discussion of this step-two finding, the ALJ noted without explanation that "the claimant's obesity and diabetes mellitus is [sic] non-severe, as defined by the Regulations." (TR 20).

The ALJ then preceded to step three of the required sequential evaluation procedure and expressly considered the medical evidence and listing requirements for each of the impairments that the ALJ previously found constituted severe impairments, including diabetes and obesity. (TR 20-21). At step four, the ALJ again recognized that Plaintiff had impairments, including obesity, depression, and diabetes, that were accommodated by a finding of the ability to perform light, unskilled work. (TR 22). Considering the decision as a whole, the ALJ's one-sentence conclusory statement that Plaintiff's obesity and diabetes impairments were "non-severe" is indicative of a typographical error, and the error is

6

harmless.

Plaintiff asserts that the ALJ erred by failing to include "functional limitations" in the RFC finding "stemming from Plaintiff's morbid obesity, depression, and diabetes mellitus. . . ." Plaintiff's Opening Brief, at 8 (ECF page number 14). But missing from this argument is any contention, supported by reference to objective medical evidence in the record, that these impairments resulted in limitations beyond those described in the ALJ's RFC finding. This wholly unsupported contention is not sufficient to allow judicial review.

RFC represents "the most [that the claimant] can still do despite [his or her] limitations." 20 C.F.R. § 416.945(a)(1). The ALJ's decision includes a thorough discussion of the medical evidence and Plaintiff's testimony and statements in the record. The ALJ determined that Plaintiff had the RFC to perform unskilled work at the light exertional level with environmental restrictions. Plaintiff points to no evidence in the record that would detract from this finding.

Further, the finding is supported by substantial evidence in the record. No physician found that Plaintiff was disabled for at least the requisite duration of one year. Plaintiff's treatment for her impairments consisted of conservative medication and therapy measures. Plaintiff indicated the prescribed medication helped her back pain. Plaintiff did not take psychotropic medication or undergo mental health treatment. Plaintiff stated that she engaged in a wide range of daily activities, including caring for three small children, and Plaintiff's treating physicians encouraged her to exercise and lose weight to reduce her symptoms. No error occurred in connection with the ALJ's RFC finding, and that finding

is well supported by the evidence in the record.

V. Evaluation of Medical Source Statements

The ALJ found that Dr. Rodriguez had completed forms for Plaintiff but those forms were illegible. (TR 18). Plaintiff asserts that the ALJ should have re-contacted Dr. Rodriguez to clarify the physician's statements on the forms. However, Plaintiff does not argue that Dr. Rodriguez's statements on these forms provided probative evidence of limitations that exceeded the limitations set forth in the ALJ's RFC finding. The forms completed by Dr. Rodriguez were mostly illegible, but, to the extent the statements on the forms can be discerned, Dr. Rodriguez stated Plaintiff was unemployable at the time he completed the forms or for a brief period of six months, a finding that appeared to be necessary for her to access vocational rehabilitation and other social services benefits through her tribe, but she might be employable in the future.

Such statements do not indicate findings consistent with disability within the meaning of the Social Security Act, which requires evidence of one or more disabling impairments lasting at least twelve months. 42 U.S.C. § 423(d)(1)(A); accord, 42 U.S.C. §1382c(a)(3)(A); see 20 C.F.R. § 416.909 (duration requirement).

Effective March 26, 2012, the regulations provide that if an ALJ determines there is insufficient evidence to determine disability the ALJ "may recontact [a] treating physician, psychologist, or other medical source," "request additional existing records" or seek further evidence from another source, including the claimant or a consultative examiner. 20 C.F.R. §§ 404.1520b, 416.920b. In this case, the evidence in the record was sufficient to allow the

ALJ to determine the relevant issues. Thus, the ALJ did not err by failing to recontact Dr. Rodriguez or further develop the record in this respect.

Plaintiff next complains that the ALJ failed to explain what weight he gave to the opinions of the state agency medical consultants appearing in the record. The ALJ has the duty to consider all of the medical opinions in the record. See 20 C.F.R. § 416.927©. The ALJ must also discuss the weight being assigned to such opinions. See id. § 416.927(e)(2)(ii) ("[T]he administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us.").

In his decision, the ALJ addressed the PRT and physical RFC assessments completed by the state agency medical consultants, Dr. Millican-Wynn and Dr. Budrich, in the decision.[1] Dr. Millican-Wynn completed a PRT assessment dated June 27, 2011, in which the psychologist found that Plaintiff did not have a severe mental impairment based on a review of the evidence to that date. (TR 323). The ALJ recognized in the decision that Plaintiff had been diagnosed with depression but found that the objective medical evidence and Plaintiff's statements concerning her daily living activities did not support limitations precluding the performance of all work activity. (TR 21).

---

[1]As the ALJ noted in the decision, another PRT form appearing in the record was unsigned and undated. (TR 23, 378-390).

9

Obviously, the ALJ rejected Dr. Millican-Wynn's PRT assessment. Completely absent from Plaintiff's argument is any assertion that Dr. Millican-Wynn's PRT assessment provided favorable evidence that should have been weighed differently. Thus, any error in the ALJ's failure to discuss the weight given to Dr. Millican-Wynn's PRT assessment is harmless. See Howard v. Barnhart, 379 F.3d 945, 947 (10th Cir.2004) ("When the ALJ does not need to reject or weigh evidence unfavorably in order to determine a claimant's RFC, the need for express analysis is weakened.").

Dr. Budrich completed a physical RFC assessment dated July 11, 2011, in which the physician found, based on a review of the evidence in the record to that date, that Plaintiff was capable of performing the exertional requirements of light work with the added limitation that she should avoid even moderate, but not all, exposure to environmental pollutants such as fumes, odors, dusts, gases, and poor ventilation. (TR 326, 329). The ALJ's RFC finding is completely consistent with Dr. Budrich's physical RFC assessment. Hence, it is clear from the decision that the ALJ found the opinion persuasive and gave it substantial weight. No error occurred in this respect. See Keyes-Zachary v. Astrue, 695 F.3d 1156, 1162-63 (10th Cir. 2012)(finding no error in ALJ's failure to discuss the weight assigned to a medical source opinion when "giving greater weight to [doctor's] opinion would not have helped" the plaintiff). The same holds true for the opinion of Dr. Wainner. The ALJ recognized that Dr. Wainner, a state agency medical consultant, stated on October 11, 2011, that he had reviewed the medical evidence to that date and affirmed Dr. Budrich's opinion as written. (TR 24, 393).

Plaintiff complains that the opinions by Dr. Budrich and Dr. Wainner should not have been given any weight because the consultants had not considered subsequent medical evidence in the record. It is true that the record contains evidence of subsequent medical treatment of Plaintiff for a variety of medical conditions. But Plaintiff points only to the forms completed by Dr. Rodriguez for Plaintiff so that she could access tribal benefits as additional evidence that should have affected the weight given the consultants' opinions. But, to the extent the forms are legible, Dr. Rodriguez did not include objective medical findings or evidence in the forms that would be consistent with a finding of disability within the meaning of the Social Security Act. In these forms, Dr. Rodriguez consistently stated that Plaintiff might be amenable to treatment and employable at some point in the future, a conclusory statement that is not consistent with the expression of a disabling impairment. Thus, no error occurred with respect to the ALJ's reliance upon Dr. Budrich and Dr. Wainner's medical source statements.

VI. <u>Evaluation of Third Party Statement</u>

Plaintiff complains that the ALJ did not expressly consider the third party statement submitted by her father, Mr. Whitewolf. This third party statement was submitted by Plaintiff's representative to the Appeals Council. Therefore, the ALJ did not err in failing to expressly consider this statement.

The Appeals Council stated that it had considered this additional evidence, as well as the office notes of treatment of Plaintiff by Dr. Ofori in July and October 2012, and therefore this evidence became part of the record. See <u>Blea v. Barnhart</u>, 466 F.3d 903, 908 (10th Cir.

2006)("We note that any new evidence submitted to the Appeals Council on review becomes part of the administrative record to be considered when evaluating the Secretary's decision for substantial evidence.")(quotation omitted).

The Appeals Council found that this evidence did not provide a basis for changing the ALJ's determination. (TR 2). Plaintiff only generally asserts that Mr. Whitewolf's statements are consistent with Plaintiff's reports and addressed "the effect of symptoms." Plaintiff's Opening Brief, at 12-13 (ECF page numbers 18-19). These generalized assertions do not present specific evidence that would detract from the Appeals Council's decision.

Dr. Whitewolf's statement did not provide evidence inconsistent with the ALJ's RFC and ultimate step-five findings. For instance, Mr. Whitewolf stated that Plaintiff "sometimes" had breathing problems due to asthma and "sometimes" could not walk very far. (TR 221). Despite her impairments, Mr. Whitewolf stated that she provided full-time care for her three children, cooked meals, cleaned her home, did laundry, and needed assistance only (1) for child care only when she had doctors' appointments or (2) for moving furniture or taking the garbage out. (TR 221-223). He did not comment on Plaintiff's ability to take care of her personal needs, and he stated that she went grocery and clothes shopping, watched television, talked on the telephone, visited with family members, might go out to eat, took her children to school, and attended social activities. (TR 222-226). These statements are indicative of a wide range of daily activities and provide evidence consistent with the ALJ's RFC finding for the ability to perform light work. No error occurred in connection with the Appeals Council's evaluation of this evidence.

VII. Step Five Finding of Ability to Perform Other Work in the Economy

Plaintiff contends that there is not substantial evidence to support the ALJ's step five determination. The ALJ relied on VE testimony in determining that Plaintiff was not capable of performing her past relevant work, in light of the RFC assessment for light, unskilled work with environmental limitations, but she was capable of performing other jobs available in the economy.

Plaintiff points to the VE's testimony that Plaintiff could perform the job of housekeeper. Plaintiff correctly contends that the Dictionary of Occupational Titles ("DOT") describes this position as "medium" work. The Commissioner responds that even eliminating this job, the VE identified, and the ALJ properly found, there were a significant number of jobs available in the economy that Plaintiff could perform.

The ALJ erred in finding that Plaintiff could perform the "medium" exertional job of housekeeper. However, the ALJ also identified two other jobs that fell within Plaintiff's RFC for work, that of a laundry aide and a counter attendant. The VE testified that a hypothetical individual with Plaintiff's RFC for work could perform these jobs and that they existed in significant numbers in the economy.

Plaintiff contends that these jobs, too, exceeded her limitations as described in the ALJ's RFC determination. With respect to the job of laundry aide, Plaintiff contends that she could not perform this job because it is described in the DOT as requiring constant exposure to wetness and/or humidity. The DOT describes the job of laundry aide as a light, unskilled job that does not require any exposure to toxic caustic chemicals or other

13

environmental conditions, although it may involve constant exposure to wetness and/or humidity. DICOT 302.685-010.

The ALJ did not find that Plaintiff's RFC for work included an inability to work around wetness and/or humidity. The RFC determination, which is supported by Dr. Budrich's RFC assessment, is a limitation on Plaintiff's exposure to harsh chemicals such as fumes and gases. Consistent with the VE's testimony, the DOT does not indicate that this job requires exposure to such chemicals, and, therefore, the ALJ did not err in relying on the VE's testimony to find that Plaintiff is capable of performing this job.

With respect to the job of counter attendant, Plaintiff contends that she could not perform this job because it involves occasional exposure to "other environmental conditions." In the RFC determination, the ALJ found that Plaintiff must avoid "even moderate exposure to fumes, odors, dust, gases, poor ventilation, and noxious fumes."

The DOT describes the job of counter attendant as a light, unskilled job that does not require any exposure to toxic caustic chemicals, although it may involve occasional exposure to other environmental conditions. DICOT 311.477-010. The Department of Labor defines "other environmental conditions" as a catch-all term for conditions not previously described, and states that the term "other environmental conditions"

> may include, but are not limited to, such settings as demolishing parts of buildings to reach and combat fires and rescue persons endangered by fire and smoke; mining ore or coal underground; patrolling assigned beat to prevent crime or disturbance of peace and being subjected to bodily injury or death from law violators; diving in ocean and being subjected to bends and other conditions associated with high water pressure and oxygen

14

> deprivation; patrolling ski slopes prior to allowing public use
> and being exposed to danger of avalanches.

SCODICOT App. D. Plaintiff does not suggest that any of these environmental conditions would exist in the light, unskilled job of counter attendant. There is no evidence showing that the DOT's job information for this position conflicts with the VE's testimony.

The VE's testimony concerning the availability of the two remaining jobs provides substantial evidence to support the ALJ's decision. Therefore, the Commissioner's decision should be affirmed.

## RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter AFFIRMING the decision of the Commissioner to deny Plaintiff's application for benefits. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before _____May 11th___, 2015, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned

Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this \_\_\_\_21st\_\_\_\_ day of \_\_\_\_April\_\_\_\_, 2015.

*Gary M. Purcell*
GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE